# United States Court of Appeals for the Federal Circuit

2007-5153

CASITAS MUNICIPAL WATER DISTRICT,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Katherine J. Barton, Attorney, Appellate Section, Environment & Natural Resources Division, United States Department of Justice, of Washington, DC, filed a combined petition for panel rehearing and rehearing en banc for defendant-appellee. With her on the petition was Ronald J. Tenpas, Assistant Attorney General.

Roger J. Marzulla, Marzulla Law, of Washington, DC, filed a response to the petition for plaintiff-appellant. With him on the response was Nancie G. Marzulla.

Tara L. Mueller, Deputy Attorney General, California Office of the Attorney General, of Oakland, California, for amicus curiae California State Water Resources Control Board. With her on the brief was Clifford T. Lee, Deputy Attorney General, of San Francisco, California.

Robert S. Nicksin, O'Melveny & Myers LLP, of Los Angeles, California, for amicus curiae California Trout, Inc.

John D. Echeverria, Georgetown Environmental Law & Policy Institute, Georgetown University Law Center, of Washington, DC, for amicus curiae Natural Resources Defense Council. Of counsel on the brief was Katherine S. Poole, Natural Resources Defense Council, of San Francisco, California.

David R. Owen, University of Maine School of Law, of Portland, Maine, for amici curiae Law Professors (Robert W. Adler, et al.). With him on the brief was Joseph L. Sax, of Berkeley, California.

Craig Holt Segall, Sierra Club Environmental Law Program, of San Francisco, California, for amici curiae Defenders of Wildlife, et al.

Ellison Folk, Shute, Mihaly & Weinberger LLP, of San Francisco, California, for amici curiae Fisheries Scientists (Kozmo Bates, et al.). With him on the brief was Matthew D. Zinn.

Jeffrey Bossert Clark, Kirkland & Ellis LLP, of Washington, DC, for amici curiae Tulare Lake Basin Water Storage District, et al. With him on the brief was Scott M. Abeles. Of counsel on the brief was William C. Kuhs, Kuhs & Parker, of Bakersfield, California.

Appealed from: United States Court of Federal Claims

Senior Judge John P. Wiese

# United States Court of Appeals for the Federal Circuit

2007-5153

CASITAS MUNICIPAL WATER DISTRICT,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

Appeal from the United States Court of Federal Claims in case no. 05-CV-168, Senior Judge John P. Wiese.

ON PETITION FOR PANEL REHEARING
AND REHEARING EN BANC

Before MICHEL, Chief Judge, NEWMAN, MAYER, LOURIE, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, PROST, and MOORE, Circuit Judges.

PER CURIAM.

MOORE, Circuit Judge, with whom RADER and SCHALL, Circuit Judges, join, concurs in the denial of the petition for rehearing en banc. GAJARSA, Circuit Judge, with whom MICHEL, Chief Judge, and DYK, Circuit Judge, join, dissents from the denial of the petition for rehearing en banc.  LINN, Circuit Judge, dissents.

O R D E R

A combined petition for panel rehearing and rehearing en banc was filed by the

Appellee, and a response thereto was invited by the court and filed by the Appellant.

The court granted the motions of California State Water Resources Control Board,

California Trout, Inc., Natural Resources Defense Council, Law Professors Robert W.

Adler, et al., Defenders of Wildlife et al., Fisheries Scientists Kozmo Bates, et al., and

Tulare Lake Basin Water Storage District et al. for leave to file briefs as amici curiae.

The petition for rehearing was referred to the panel that heard the appeal, and thereafter the petition for rehearing en banc, response, and the amici curiae briefs were referred to the circuit judges who are authorized to request a poll whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1)  The petition for panel rehearing is denied.

(2)  The petition for rehearing en banc is denied.

(3)  The mandate of the court will issue on February 24, 2009.

FOR THE COURT

February 17, 2009
  Date

/s/ Jan Horbaly
Jan Horbaly
Clerk

cc: Roger J. Marzulla, Esq.
  Katherine J. Barton, Esq.
  Tara L. Mueller, Esq.
  Robert S. Nicksin, Esq.
  John D. Echeverria, Esq.
  David R. Owen, Esq.
  Craig Holt Segall, Esq.
  Ellison Folk, Esq.
  Jeffrey Bossert Clark, Esq.

2007-5153    2

# United States Court of Appeals for the Federal Circuit

2007-5153

CASITAS MUNICIPAL WATER DISTRICT,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

Appeal from the United States Court of Federal Claims in Case No. 05-CV-168, Senior Judge John P. Wiese.

MOORE, <u>Circuit Judge</u>, with whom RADER and SCHALL, <u>Circuit Judges</u>, join, concurring.

I concur in the decision of the court not to rehear this case <u>en banc</u>. This case, <u>as it was presented to us in this appeal</u>, is one in which a physical, not a regulatory, taking analysis ought to apply. For the purposes of the summary judgment ruling on appeal, the government conceded (1) that Casitas had a property right in the water diverted from the Ventura River, and (2) that the government required Casitas to build and operate the fish ladder in such a way as to permanently appropriate water in which Casitas had the conceded property right. To the extent that the facts may be in dispute, Casitas' version of the facts must be taken as true because the government was the moving party. In view of these facts, it is clear that the government has not merely burdened, impounded, restricted in use, temporarily impaired, or otherwise regulated Casitas' water. Rather, it has appropriated it, and where, as here, the government action is "the functional equivalent of a practical ouster of the owner's possession," a

physical takings analysis is appropriate.  Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005).

For purposes of the decision below, and this appeal, the government conceded that Casitas' right to divert annually 107,800 acre-feet of water is part of its property right.  Def.'s Reply Supp. Mot. Partial Summ. J. at 3-4 ("Plaintiff [characterizes its property interest] in its opposition brief [as follows]: 'In this case, Casitas claims the right to divert through the Ventura River Project 107,800 acre-feet of water from the Ventura River per year and the right to put 28,500 acre-feet of water to beneficial use each year . . . .' [I]n order to streamline this summary judgment process, and to avoid any unnecessary confusion in the resolution of the nature or type of taking at issue in this case (i.e., physical or regulatory) defendant will assume for purposes of this motion that plaintiff's characterization of the scope of its property interests is correct.").[1]  Casitas diverts its water from behind the Robles Diversion Dam in the Ventura River and into the Robles-Casitas Canal, where it then flows to Lake Casitas.

Furthermore, for the purposes of the decision below, and this appeal, the government conceded that it required Casitas to comply with the biological opinion. Appellee's Brief at 22 n.6 ("Reclamation never required Casitas to install the fish ladder or comply with the operating criteria in the BiOp.  For the purposes of this appeal from the CFC's summary judgment rulings, however, the United States assumes at this stage

---

[1]  Because of the government's concession, the majority did not undertake to decide if, under California Law, there can be a right to divert water.  Nor did we undertake to reach a factual conclusion about whether Casitas will experience a reduction in the amount of water that it can beneficially use.  These concerns and others are undoubtedly critical to the ultimate outcome of Casitas' action, but they are not before us in this appeal.

of the proceedings that Casitas' factual allegation [that Casitas indeed was required to build the fish ladder and comply with the BiOp] is correct."). The biological opinion describes diverting water to create flow through the fish ladder. Of course, the fish ladder cannot become operational as required by the biological opinion unless it is provided with water. That water, as the government admitted in oral argument, comes out of the Casitas-Robles Canal. Oral Argument at 30:28-31:30, referencing id. at 5:20-6:35, 10:10-10:57. In other words, the water for the fish ladder comes out of Casitas' allotment of 107,800 acre-feet per year. That is so because, once the water is in the canal, it is water that Casitas has diverted pursuant to its allotment. It thus has become the property of Casitas. The operation of the fish ladder diversion works thus takes property of Casitas. The government does not explain how the fish ladder can be operated if water is merely left in the Ventura River. Nor does it explain how the fish ladder could be operated with then-existing water flows. Nor is there a distinction between some water that must remain in the Ventura River and the water needed for the fish ladder. Casitas' explanation of the pertinent facts was clear and undisputed, and regardless, ought to be taken as true because the government was the moving party in the summary judgment motion now on appeal.

In light of the aforementioned facts, it is readily apparent that the government "t[ook] property from A and g[ave] it to B." Eastern Enters v. Apfel, 524 U.S. 498, 523 (1998) (citing Calder v. Bull, 3 Dall. 386, 388 (1798)). The dissent analogizes the situation in Casitas to that in Pennsylvania Coal v. Mahon, where the Court held that a statute restricting the mining of coal constituted a regulatory taking. 260 U.S. 393, 415 (1922). Mahon does not control this case because in Mahon, the government did not

physically appropriate the coal. Rather, it preserved the status quo by leaving the coal in the ground.[2] As the Court explained in Lingle v. Chevron U.S.A. Inc., a physical takings analysis is appropriate where there is "direct government appropriation or physical invasion of private property." 544 U.S. 528, 537 (2005) (further explaining that physical takings analysis is appropriate where the government action is the "functional equivalent of a practical ouster of the owner's possession"). In Casitas, the government changed the status quo by irrevocably appropriating Casitas' water and sending it down the fish ladder where Casitas could not recover it.

The dissent also relies on Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Activity, 535 U.S. 302 (2002). Tahoe-Sierra concerns a taking claim arising from the application of a temporary moratorium on land development. The Court held that such a temporary moratorium did not constitute a per se taking because "[l]ogically, a fee simple estate cannot be rendered valueless by a temporary prohibition on economic use, because the property will recover value as soon as the prohibition is

---

[2] Furthermore, the Court in Mahon was not presented with the issue of whether a taking was a physical or regulatory taking, nor was the Court presented with the issue of water diversion. The dispute in Mahon was whether the Kohler Act represented an exercise of eminent domain at all, or rather an uncompensated exercise of the police power. See e.g., Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 481-84 (explaining Mahon). Mahon is not an apt guide for distinguishing regulatory takings and physical takings bearing on water rights. To the extent that a factual analogy between this case and Mahon is relevant, consider that the Kohler Act did not necessarily require Pennsylvania Coal to "leave in place a pillar of coal to prop up the surface land" as the dissent asserts. "The statute forbids the mining of anthracite coal in such way as to cause the subsidence of, among other things, any structure used as a human habitation." Mahon, 260 U.S. at 412-13. Counsel for Pennsylvania pointed out that "[t]he act does not go as far as the Barrier Pillar Act. It contains no provision requiring any mine owner to leave coal in place. If natural support other than coal in the pillars be available, or if artificial support be provided, every pound of coal may be removed from the mines." Id. at 404-11.

lifted." Id. at 331-32. Tahoe-Sierra does not answer the questions posed by this case. It did not involve a physical taking claim, and it did not address or purport to cut back on the Court's water rights cases. In Tahoe-Sierra, the temporary moratorium at issue preserved the status quo for 32 months, and then returned the land to its owner. In our case, the government diverts the water out of the Robles-Casitas Canal and sends it down the fish ladder to the Ventura River below the Robles Dam. That water will never flow to Lake Casitas, and it is permanently taken from Casitas.

The dissent further relies on Boise Cascade Corp. v. United States, 296 F.3d 1339, 1354 (Fed. Cir. 2002). I do not disagree that "[t]he governmental protection of owls in Boise Cascade . . . is not comparable to a governmental authorization to third parties to utilize property." Seiber v. United States 364 F.3d 1356, 1367 (Fed. Cir. 2004). But the taking claim in Boise Cascade arose from a district court's injunction, requiring that no logging take place without a permit, issued after a juvenile spotted owl was discovered on Boise's land. We held, inter alia, that the mere imposition of a permitting requirement did not give rise to a physical taking under Loretto because "[t]he government simply imposed a temporary restriction on Boise's exploitation of certain natural resources located on its land unless Boise obtained a permit." As with Tahoe-Sierra, Boise Cascade does not aid our decision in this case because it concerns a temporary restriction that preserves the status quo and permanently takes nothing away from the property owner.

Finally, the dissent analogizes this case to previous ones treating "the prohibition of surface mining as a potential regulatory taking." In Stearns Co. v. United States, 396 F.3d 1354, 1358 (Fed. Cir. 2005) and Rith Energy, Inc. v. United States, 247 F.3d 1355,

1364 (Fed. Cir. 2001), the takings claims arose from government orders restricting mining operations. In neither of those cases did the government commandeer any coal for public use. This is in contrast to our situation, where the government diverted water away from Casitas for public use, and Casitas could never recapture that water.

Respectfully, we did offer a reason for treating Casitas' water differently than the coal, trees, and other property involved in the regulatory takings cases cited by the dissent. The Supreme Court has repeatedly found water diversions to be physical takings. International Paper Co. v. United States, 282 U.S. 399 (1931); United States v. Gerlach Live Stock Co., 339 U.S. 725 (1950); Dugan v. Rank, 372 U.S. 609 (1963). In each of these cases, the United States physically diverted the water, or caused water to be diverted away from the plaintiffs' property. In each of these cases the diverted water was dedicated to government use or third party use which served a public purpose. Under the facts of this case as configured on appeal, we are compelled to reach the same conclusion.

# United States Court of Appeals for the Federal Circuit

2007-5153

CASITAS MUNICIPAL WATER DISTRICT,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee,

Appeal from the United States Court of Federal Claims in Case No. 05-CV-168, Senior Judge John P. Wiese.

GAJARSA, <u>Circuit Judge</u>, with whom MICHEL, <u>Chief Judge</u>, and DYK, <u>Circuit Judge</u>, join, dissenting from denial of petition for rehearing en banc.

For the reasons stated below, I respectfully dissent from the court's decision to deny the United States' petition for rehearing en banc. This denial implicates fundamental questions regarding takings law. The panel majority's opinion suggests that a government action can be construed to be a physical taking even if no physical proprietary interest has actually been taken by the United States. This is contrary to present Supreme Court law and contrary to our case law. Accepting this analysis of the panel majority eliminates the fine distinction and balance that has been established by the Supreme Court between physical and regulatory takings. Moreover, it eliminates the ability of the legislature to provide for limited and parsimonious legislation protecting endangered species.

Supreme Court holdings are clear: in order to have a physical taking, there must be an appropriative use made of any such property. <u>Eastern Enters v. Apfel</u>, 524 U.S. 498, 523 (1998) (citing <u>Calder v. Bull</u>, 3 Dall. 386, 388 (1798) ("'It is against all reason

and justice' to presume that the legislature has been entrusted with the power to enact 'a law that takes property from A. and gives it to B.'")). Conversely, if property is merely restricted in use by a regulation, that is the essence of a regulatory taking. Cf. Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S 419, 436 (1982) (distinguishing the physical invasion in that case as "qualitatively more severe than a regulation of the use of property, even a regulation that imposes affirmative duties on the owner, since the owner may have no control over the timing, extent, or nature of the invasion").

Assuming that Casitas does have a property right in the water it is permitted to divert from the Ventura River above the Robles dam, cf. Amicus Curiae Br. of Cal. St. Water Resources Control Bd. at 6, 7–8 (identifying and explaining limitations on water rights under California law), the parties agree that this right is only a right to divert water.[1] Thus, to the extent that the government has limited Casitas' property, this limitation can by definition amount to no more than a burden on Casitas' usufructuary right to divert water.[2] Despite Loretto's recognition that regulations on the use of property, even those imposing affirmative obligations on property owners, do not constitute physical takings, the panel majority reached a novel conclusion—a

---

[1] The panel majority and en banc concurrence mistakenly characterize Casitas' right to divert water—which the government conceded to be within the scope of Casitas' property rights for purposes of summary judgment—as a possessory ownership right. Such a property right has not at any time been conceded and, indeed, could not be said to exist under California law.

[2] The parties agreed that Casitas has the right to divert 107,800 acre-feet of water from the river each year, but does not have any other rights with respect to that water. The diverted water is stored in Lake Casitas and evaporates or is released back into the river over the Lake Casitas dam; Casitas has an appropriative right to actually use only 28,500 acre-feet of water per year. The parties also appear to agree that there has been no taking of the 28,500 acre-feet of water to which Casitas has an appropriative right.

requirement under the Endangered Species Act to leave in a river a minimum amount of water that is not itself privately owned must be analyzed as a physical taking of a party's use of that water. Cf. Nollan v. Cal. Coastal Comm'n, 483 U.S. 825, 831–34 (1987) (analyzing a land use permit conditioned on the grant of a public easement as a regulatory taking, even though outright acquisition of the easement by the government would constitute a physical taking).[3] The panel majority's legal conclusion impairs and frustrates the logic applied by the Supreme Court.

Even if Casitas owned the water outright, there would be no basis for the panel majority's decision. The legal premise for this case should begin with Penn Central's recognition that regulatory takings analysis applies to a government "interference aris[ing] from some public program adjusting the benefits and burdens of economic life to promote the common good," Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978), and conclude with Tahoe Sierra, where the Court based its analysis on the "longstanding distinction between acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other," Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 323 (2002). See also id. at 324 n.18 (distinguishing "'actual taking of possession and control' of a coal mine" analyzed as a physical taking, United States v. Pewee Coal Co., 341 U.S. 114, 116 (1951), from issuance of "a wartime order requiring nonessential gold mines to cease operations"

---

[3] In the instant case, the requirements of the BiOp—that more water remain in the Ventura River and that Casitas build a fish ladder—were imposed as conditions for Casitas' incidental take permit, under which it would not be liable for damage to the endangered steelhead.

analyzed as a regulatory taking, <u>United States v. Central Eureka Mining Co.</u>, 357 U.S. 155, 168 (1958)).

Such an approach would be consistent with Supreme Court precedent stretching back to <u>Pennsylvania Coal v. Mahon</u>, 260 U.S. 393, 415 (1922). In <u>Mahon</u>, a statute required coal companies to leave in place a pillar of coal to prop up the surface land above coal mines owned by third parties. The statute destroyed the coal companies' right to mine the coal contained in the pillars—characterized by the court as "very nearly the same effect for constitutional purposes as appropriating or destroying [the right]," <u>id.</u> at 414–15—in favor of the public's interest in preserving the surface land above the coal mines. The Supreme Court treated the question as involving a regulatory taking, not a physical taking: "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." <u>Id.</u> at 415. The Court went on to explain that the question was one "of degree," not capable of being "disposed of by general propositions." <u>Id.</u> at 416. The particular regulation was held to constitute a taking.

In shaping the factors that go into a regulatory taking, the Supreme Court expressly relied on <u>Mahon</u> in <u>Penn Central</u>. There, the Court characterized <u>Mahon</u> as "the leading case for the proposition that a state statute that substantially furthers important public policies may so frustrate distinct investment-backed expectations as to amount to a 'taking.'" <u>Penn Central</u>, 438 U.S. at 127. And in <u>Tahoe-Sierra</u>, the Court relied extensively on <u>Mahon</u>, which it characterized as the opinion that "gave birth to our regulatory takings jurisprudence." 535 U.S. at 325.

The panel majority offers no convincing reason for approaching this case differently from <u>Mahon</u>. Casitas alleged a property right to the consumptive use of the diverted water that is similar to the right the coal companies had to mine the pillars of coal that were propping up the surface land in <u>Mahon</u>. Both Casitas' and the coal companies' use rights were frustrated by governmental regulation. But in neither case did the government appropriate property or convey it to a third party. It is, therefore, inconsistent with precedent to treat the diversion of water in this case as a physical taking, given that the Supreme Court treated the limitation on coal use in <u>Mahon</u> as a regulatory taking.

The panel majority's analysis here appears contrary as well to many of our own cases. We have consistently rejected landowners' claims that species preservation regulations effect a temporary physical taking because a portion of their property is exclusively occupied, at least for a period of time, by an endangered species. For example, we have treated a requirement that a landowner not cut and utilize trees that are used for owl nesting as a regulatory taking. <u>Boise Cascade Corp. v. United States</u>, 296 F.3d 1339, 1354 (Fed. Cir. 2002). We specifically noted in <u>Seiber v. United States</u> that "[t]he governmental protection of owls in <u>Boise Cascade</u> . . . is not comparable to a governmental authorization to third parties to utilize property." 364 F.3d 1356, 1367 (Fed. Cir. 2004). And we have treated the prohibition of surface mining as a potential regulatory taking. <u>Stearns Co. v. United States</u>, 396 F.3d 1354, 1358 (Fed. Cir. 2005); <u>see also</u> <u>Rith Energy, Inc. v. United States</u>, 247 F.3d 1355, 1364 (Fed. Cir. 2001). The panel majority's opinion offers no reason for treating water differently than coal or trees or other property involved in regulatory takings cases.

Furthermore, the panel majority's rationale premised on International Paper Co. v. United States, 282 U.S. 399 (1931), United States v. Gerlach Livestock Co., 339 U.S. 725 (1950), and Dugan v. Rank, 372 U.S. 609 (1963), does not support a physical taking analysis here, if those decisions are properly analyzed. In International Paper, all of the water previously used by the plaintiff to operate its paper mill was requisitioned for power generation. 282 U.S. at 405–06. In both Gerlach and Dugan, all of the seasonal flood waters in which landowners adjacent to the San Joaquin River had a riparian right of use for irrigation of their grasslands were diverted and sold to other property owners for irrigation. Gerlach, 339 U.S. at 729–30; Dugan, 372 U.S. at 613–14. These cases do not support the panel majority's conclusion that this restriction on the use of Casitas' property should be analyzed as a physical appropriation rather than a mere regulatory requirement that less of it be used. Cf. Mahon, 260 U.S. at 414–15; Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 477, 488 n.8 (1987) (noting that a requirement to leave 50% of subsurface coal unmined "of course, involves land use regulation, not a physical appropriation of petitioners' property"). Moreover, the Supreme Court has clearly proceeded and clarified the distinctions between and among physical and the various forms of regulatory takings in, for example, Penn Central, Loretto, Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992), Tahoe-Sierra, and Lingle v. Chevron U.S.A., Inc., 544 U.S. 528 (2005).

The panel majority opinion fails to follow clear Supreme Court and Federal Circuit precedent. For these reasons, this court should have reconsidered the case en banc. Failing to do so, I dissent.